*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* LCP, Minor.

UNPUBLISHED
September 17, 2025
10:16 AM

No. 373274
Marquette Circuit Court
Family Division
LC No. 23-004813-AF

Before: WALLACE, P.J., and RIORDAN and REDFORD, JJ.

PER CURIAM.

Respondent-mother appeals as of right the trial court's order terminating her parental rights to her minor child, LCP, under MCL 712A.19b(3)(f) (failure to provide both financial support and contact for a two-year period). On appeal, respondent primarily argues that the trial court erred by finding that she failed to provide financial support for LCP under MCL 712A.19b(3)(f)(*i*), given that she was incarcerated during the relevant time period and had no significant assets or income. We agree with respondent because MCL 712A.19b(3)(f)(*i*) requires having an ability to provide financial support, which she lacked. Therefore, we reverse the trial court's order and remand to that court for further proceedings.

## I. FACTS

In April 2021, LCP was placed in a guardianship with his paternal aunt and his aunt's husband ("uncle") after being in their care since January 2021. While not entirely clear from the record, it appears that the reason for this arrangement was the fact that respondent, who was responsible for LCP, was "going through some stuff" at the time. Ultimately, respondent was incarcerated in Wisconsin beginning on November 14, 2021, with an expected early release date in May 2025. Indeed, according to the Wisconsin Department of Corrections website, respondent

-1-

was "Released on Extended Supervision" in May 2025, and her sub-status is "OUT TO OTHER STATE."[1]

Meanwhile, on November 29, 2023, LCP's aunt and uncle, along with LCP's father in a separate petition, asked the trial court to terminate respondent's parental rights to LCP under MCL 712A.19b(3)(f), and allow his aunt and uncle to adopt him. Those petitions are at issue in this appeal.[2]

At the hearing on the petitions, LCP's father testified that he was incarcerated for a period of time in Wisconsin until July 2022, that he maintains regular contact with LCP, and that respondent apparently has not maintained regular contact with, or financial support for, LCP in the past two years. Similarly, LCP's aunt and uncle testified that respondent has not maintained regular contact with, or financial support for, LCP for an extended period of time. LCP's aunt explained that respondent attempted to call her in November 2023, but before that time, her previous contact with respondent was in August 2021.

Respondent testified that her last employment before her November 2021 incarceration was in about January or February 2020 working for a "temp service" for $12.50 an hour; that she has worked in prison for about 26 cents to one dollar an hour, depending on the job, with a total income of about $600 during her incarceration; and that she has no other assets.[3] Respondent explained that she attempted to contact LCP a few times when she was in prison but that she was apparently rebuffed by his father and aunt. Respondent acknowledged that she has not provided financial support for LCP since he has been in the care of his aunt and uncle.

Finally, the trial court judicially noticed that on June 29, 2023, the court had entered a $0 per month child-support order against respondent, consistent with an order that had been entered in Brown County, Wisconsin, earlier that month.

In October 2024, the trial court entered its written opinion and order terminating respondent's parental rights to LCP. With regard to MCL 712A.19b(3)(f)(*i*), which concerns the failure to provide support for a two-year period preceding the filing of the petition despite having the ability to do so, the trial court found that this prong was satisfied because respondent provided no support, financial or otherwise, for LCP:

---

[1] See https://doc.wi.gov/Pages/OffenderInformation/AdultInstitutions/GeneralInformation.aspx, accessed August 12, 2025. Respondent participated remotely in these proceedings.

[2] Granting the petitions would terminate the father's parental rights as well.

[3] Respondent explained that she held the job that paid one dollar an hour for about three months. However, respondent explained, now that she was "in college," she only received 12 dollars every two weeks. She added that her money was primarily spent on "commissary" and "hygiene." In addition, respondent briefly implied that she was only able to earn money in prison since July 2023, when she transferred from a maximum-security unit to a minimum-security unit. But, her testimony in this regard is unclear.

There is clear and convincing evidence that, [respondent] never provided support to the [aunt and uncle] for the child. The Court was not persuaded that for the time period before entry of the zero support order that [respondent] did not have the ability to support her child. She provided no good cause reason why she did not support [LCP]. [Respondent] relied upon [the aunt and uncle] to provide everything for her son. From January 1, 2021 until her incarceration in November 2021, she provided no support for [LCP]. After her incarceration from November 2021 until the zero support order in June 2023, she provided no support for [LCP]. She made no effort to provide any money whatsoever to [LCP].

With regard to MCL 712A.19b(3)(f)(*ii*), which concerns the failure to maintain contact with the minor for a two-year period preceding the filing of the petition despite having the ability to do so, the trial court found that this prong was satisfied as well:

The last time [respondent] had contact with [LCP], it was August 2021 when the guardian brought him to see her in Wisconsin.

There were no other visits. No cards. No letters. No telephone calls. No texts. No messages. No contact.

No reason was given by [respondent] for lack of contact before her incarceration. After her incarceration she said she did not have contact information. The Court did not find [respondent] credible in her testimony. Her mother and grandmother had contact information, however. She did not ask them. She took no proactive steps to stay in touch with her child. She did nothing. The guardians did nothing to keep [LCP] away from his mother. The Court found [the aunt and uncle] credible. There was clear and convincing evidence that the second prong was met. . . .

Accordingly, the trial court terminated respondent's parental rights to LCP and ordered that the guardianship remain in effect until further order of the court.

This appeal followed.

## II. STANDARD OF REVIEW

"In order to terminate parental rights, the trial court must find by clear and convincing evidence that at least one of the statutory grounds for termination in MCL 712A.19b(3) has been met." *In re VanDalen*, 293 Mich App 120, 139; 809 NW2d 412 (2011). "We review the trial court's determination for clear error." *Id*. "A finding of fact is clearly erroneous if the reviewing court has a definite and firm conviction that a mistake has been committed, giving due regard to the trial court's special opportunity to observe the witnesses." *In re BZ*, 264 Mich App 286, 296-297; 690 NW2d 505 (2004).

## III. DISCUSSION

Respondent argues that the trial court clearly erred by finding that MCL 712A.19b(3)(f)(*i*) and (*ii*) were proven by clear and convincing evidence. We agree with respect to MCL 712A.19b(3)(f)(*i*) and therefore reverse the trial court on that ground.[4]

MCL 712A.19b(3)(f) provides as follows:

> The court may terminate a parent's parental rights to a child if the court finds, by clear and convincing evidence, 1 or more of the following:
>
> * * *
>
> (f) The child has a guardian under the estates and protected individuals code, 1998 PA 386, MCL 700.1101 to 700.8206, and both of the following have occurred:
>
> (*i*) The parent, having the ability to support or assist in supporting the minor, has failed or neglected, without good cause, to provide regular and substantial support for the minor for a period of 2 years or more before the filing of the petition or, if a support order has been entered, has failed to substantially comply with the order for a period of 2 years or more before the filing of the petition.
>
> (*ii*) The parent, having the ability to visit, contact, or communicate with the minor, has regularly and substantially failed or neglected, without good cause, to do so for a period of 2 years or more before the filing of the petition.

Simply put, MCL 712A.19b(3)(f) contemplates the two years immediately preceding the filing of the petition. *In re Caldwell*, 228 Mich App 116, 120; 576 NW2d 724 (1998) ("[T]he court must determine whether statutory grounds for termination exist by looking at the two years immediately preceding the filing of the termination petition.").[5] Moreover, with regard to MCL

---

[4] MCL 712A.19b(3)(f) provides that termination of parental rights is warranted when "both of the following have occurred," i.e., both (f)(*i*) and (f)(*ii*). In other words, MCL 712A.19b(3)(f)(*i*) and (*ii*) are not alternatives but, rather, are two statutory requirements that must be independently satisfied. As a result, the failure to satisfy either (f)(*i*) or (*ii*) requires reversal when the ground for termination at issue is MCL 712A.19b(3)(f). See, e.g., *In re Ernsberger*, ___ Mich App ___, ___; ___ NW3d ___ (2024) (Docket No. 369225); slip op at 4 ("The court, therefore, did not err by finding that the requirements set forth in MCL 712A.19b(3)(f)(*ii*) were satisfied. . . . However, we conclude that termination was nevertheless improper because the trial court clearly erred by finding that the requirements in MCL 712A.19b(3)(f)(*i*) were satisfied."); *In re Tacy*, unpublished per curiam opinion of the Court of Appeals, issued January 18, 2024 (Docket No. 366331), at 6 n 4 (explaining that because the trial court erred with respect to MCL 712A.19b(3)(f)(*i*), "it is not necessary for us to address respondent's challenges to the trial court's findings related to MCL 712A.19b(3)(f)(*ii*)").

[5] *In re Caldwell* concerned MCL 710.51(6), a provision of the Adoption Code referring to, in relevant part, "[t]he other parent, having the ability to support, or assist in supporting, the child, has failed or neglected to provide regular and substantial support for the child . . . ." MCL

712A.19b(3)(f)(*i*), that provision presents two alternatives, only one of which must be satisfied: (1) the respondent-parent "having the ability to support or assist in supporting the minor, has failed or neglected, without good cause, to provide regular and substantial support for the minor for a period of 2 years or more before the filing of the petition"; or (2) "if a support order has been entered, [the respondent-parent] has failed to substantially comply with the order for a period of 2 years or more before the filing of the petition." See *In re Ernsberger*, ___ Mich App ___, ___; ___ NW3d ___ (2024) (Docket No. 369225); slip op at 4.

Concerning the first alternative, the question is whether the respondent-parent "had the ability to pay regular and substantial support but had neglected to do so for two or more years." *In re SMNE*, 264 Mich App 49, 56-57; 689 NW2d 235 (2004) (discussing MCL 710.51(6)). In other words, while MCL 712A.19b(3)(f)(*i*) expressly refers to "having the ability to support or assist in supporting the minor," when that statutory provision is read as a whole, the quoted language contemplates having the ability to regularly and substantially support or assist in supporting the minor. See *id*. at 53-54. Further, concerning the second alternative, the respondent-parent must substantially fail to comply with the support order for, at a minimum, two years before the petition is filed. See *In re Ernsberger*, ___ Mich App at ___; slip op at 4.

In this case, it is undisputed that the second alternative cannot be satisfied. A $0 monthly support order was entered for LCP in June 2023, and the petitions requesting termination of parental rights were filed in November 2023. Thus, a support order was not even in existence for the requisite two-year period and, in any event, respondent logically complied with it by providing no financial support when it was in effect.

The question thus becomes whether the trial court clearly erred by finding that the first alternative was satisfied.[6] Under the circumstances of this case, we disagree with the trial court that respondent had the necessary ability to provide financial support for LCP for the two years preceding the filing of the petitions. Again, the first alternative refers to "[t]he parent, *having the ability to support or assist in supporting the minor*, has failed or neglected, without good cause, to provide regular and substantial support for the minor for a period of 2 years or more before the filing of the petition . . . ." MCL 712A.19b(3)(f)(*i*) (emphasis added). And, again, the italicized language, in conjunction with the term "regular and substantial support," means that the respondent-parent must have had the ability not only to provide any support but, rather, to provide regular and substantial support. See *In re SMNE*, 264 Mich App at 56-57. Here, as the trial court recognized in its written opinion and order, respondent testified that after she was incarcerated beginning in November 2021 (i.e., two years before the petitions were filed), she held several

___

710.51(6)(a). Because MCL 710.51(6) is nearly identical to MCL 712A.19b(3)(f), this Court has relied upon cases interpreting the former when discussing the latter. See *In re IWR*, 513 Mich 967, 970 n 3 (2024) (BOLDEN, J., *dissenting*) ("In cases involving termination under MCL 712A.19b(3)(f), the Court of Appeals has relied on its published decisions interpreting MCL 710.51(6), the stepparent adoption provision, because the provisions share similar statutory language.").

[6] There is no dispute that the guardianship aspect of MCL 712A.19b(3)(f) was satisfied.

prison jobs that variously paid between 26 cents and one dollar an hour. At the time of her testimony during the July 2024 hearing, respondent was earning 12 dollars every two weeks for taking college courses and had earned about $600 during her entire incarceration. This $600 amount, when considered over the course of her incarceration, was insufficient to enable her to provide "substantial support" for LCP, as it only amounts to a few dollars a week.[7] Thus, for example, even if respondent had given half of her earnings to LCP, that only would have amounted to about two dollars a week, which cannot be considered "substantial" under any reasonable definition of that term. Consequently, because respondent did not have the ability to provide substantial support for LCP in the two years preceding the filing of the petitions, MCL 712A.19b(3)(f)(*i*) was not satisfied, and MCL 712A.19b(3)(f) cannot provide a basis for terminating respondent's parental rights at this time.[8]

Our conclusion in this regard is consistent with *In re LHH*, unpublished per curiam opinion of the Court of Appeals, issued November 30, 2023 (Docket Nos. 365553 and 365554), in which this Court concluded that an incarcerated parent's ability to provide a dollar a week did not satisfy MCL 710.51(6) because it was not "substantial" support:

> MCL 710.51(6)(a) required petitioners to prove that respondent-father "had the ability to pay regular and substantial support but had neglected to do so for two or more years." *In re SMNE*, 264 Mich App at 56-57. Respondent-father therefore must have had the ability to provide both regular and substantial support. He does not challenge the trial court's finding that he could have paid regular support, but instead focuses on whether he could provide substantial support.

---

[7] On appeal, respondent's counsel represents that she was unable to earn any money in prison until July 2023, when she transferred from a maximum-security unit to a minimum-security unit. In this regard, when respondent was asked during the July 2024 hearing whether she was able to earn any money while incarcerated, respondent replied, "when I first got to prison and I got out of the max building, I transferred to minimum so, in July of last year I started dishwashing for 26 cents an hour. . . ." We acknowledge that this testimony suggests that respondent was unable to earn any money in prison until July 2023. However, the trial court did not make this finding and, in any event, our conclusion would be unaffected if this was accurate. That is, if respondent did not have the ability to earn any money in prison until July 2023, the two-year statutory period still would be unsatisfied.

[8] We acknowledge that interpreting and applying MCL 712A.19b(3)(f)(*i*) may present some difficulty when, as here, a support order is entered during the two-year statutory lookback period. However, resolution of this particular case is straightforward because respondent was incarcerated for the entire two-year statutory period, i.e., from November 2021 to November 2023, and it is undisputed that she only earned nominal income during that time. See *In re Caldwell*, 228 Mich App at 120 (explaining that MCL 710.51(6), and by analogy MCL 712A.19b(3)(f), contemplates a two-year lookback period). Ideally, however, the Legislature should consider amending MCL 712A.19b(3)(f)(*i*) to include the same qualifier found in MCL 710.51(6)(a): "A child support order stating that support is $0.00 or that support is reserved shall be treated in the same manner as if no support order has been entered."

The trial court already concluded that respondent-father could not provide substantial support. It determined that respondent-father could have provided a dollar a week, or $3 to $4 per month, to his children. But the trial court explicitly recognized that this amount would not make a meaningful difference in the children's lives. It would only demonstrate respondent-father's commitment. Regardless, in concluding its findings, the trial court found "by clear and convincing evidence that [respondent-father] had the ability to provide consistent support though not ample support." This finding is at odds with *In re SMNE*, 264 Mich App at 56-57 and MCL 710.51(6)(a), which required petitioners to establish that respondent-father had the ability to provide regular and substantial support. The trial court believed that the standard was whether he paid "any form of reasonable support having had the ability to do so[.]" This is not the standard. See *In re SMNE*, 264 Mich App at 56-57 (requiring proof of regular and substantial support, not any form of reasonable support). Accepting without concluding that respondent-father was able to send $4 out of the $15 he made per month in prison, one dollar per week or $3 to $4 a month is not "substantial" support. . . .

The trial court clearly erred by finding that petitioners satisfied the conditions set forth in MCL 710.51(6)(a). Because $1 a week, or $4 a month, is not a "substantial" amount of money, respondent-father did not have "the ability to pay regular and substantial support." *In re SMNE*, 264 Mich App at 56-57. This conclusion should not be viewed as creating a carveout for any incarcerated respondent. Many incarcerated respondents still have available means of providing support beyond their income from prison labor, including family support, savings, and other assets and income. This respondent's sole avenue for providing support was his prison income. The trial court determined that this would not make a meaningful difference in the children's lives. The trial court therefore could not terminate respondent-father's parental rights under MCL 710.51(6). . . . [*Id.* at 5-6.]

So too here.[9] Because respondent only had the ability to provide a nominal, non-substantial amount of financial support for LCP from her prison income, and because she apparently had no other assets or financial resources, she lacked the ability to provide "substantial support" for the purposes of MCL 712A.19b(3)(f)(*i*).

IV. CONCLUSION

---

[9] "Although MCR 7.215(C)(1) provides that unpublished opinions are not binding under the rule of stare decisis, a court may nonetheless consider such opinions for their instructive or persuasive value." *Cox v Hartman*, 322 Mich App 292, 307; 911 NW2d 219 (2017).

The trial court clearly erred by finding that MCL 712A.19b(3)(f)(*i*) was proven by clear and convincing evidence.[10]  Therefore, we reverse the trial court's order terminating her parental rights, and remand to that court for further proceedings.  We do not retain jurisdiction.

/s/ Randy J. Wallace
/s/ Michael J. Riordan
/s/ James Robert Redford

---

[10] Having so concluded, we need not reach respondent's second argument that the trial court clearly erred by finding that MCL 712A.19b(3)(f)(*ii*) was proven by clear and convincing evidence. Moreover, while not raised by respondent on appeal, we note that the trial court's written opinion and order does not include a best-interests finding.  See MCL 712A.19b(5).